IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-04-353 |
| | § | |
| JAMES HUBERT CAIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

In calculating James Hubert Cain's base offense level the probation officer relied on U.S.S.G. § 2K2.1(c).  (PSR ¶¶ 65 and 67)  The United States and the defendant both argue that the probation officer's reliance on U.S.S.G. § 2K2.1(c) is not appropriate, but neither provides analysis or authority to support their position.  After researching the issue, the court concludes that § 2K2.1(c) does not apply in this case.

### I.   Factual Background

The defendant, James Hubert Cain, pleaded guilty to Count One of the indictment, which charged him with possession of an IMI-Israel, model Uzi 9mm caliber semiautomatic rifle, by a convicted felon, on or about March 13, 2003, in violation of Title 18, United States Code, §§ 922(g)(1) and 924(a)(2).  The factual basis set

forth in the written plea agreement states that FBI agents determined that the Uzi firearm possessed by Cain was stolen during a home invasion committed by two white males in Florida on February 7, 2003, that a vehicle bearing a license plate number registered to Cain was observed in the driveway of the invaded home, that in February of 2003 Cain moved from Florida to the Southern District of Texas where he was observed with the Uzi firearm, and that in March of 2003 Cain exchanged the Uzi firearm for an $800 loan.[1]   Although circumstantial, this evidence is sufficient to allow the court to conclude by a preponderance of the evidence that Cain was one of the two white males who committed the Florida home invasion.   The issue before the court is whether Cain's acquisition of the Uzi during the Florida home invasion makes the Uzi a firearm that Cain "used or possessed" "in connection with the commission . . . of another offense" for purposes of § 2K2.1(c).

## II.  Does U.S.S.G. § 2K2.1(c) Apply?

U.S.S.G. § 2K2.1(c) contains a cross-reference that provides

(1)  If the defendant used or possessed any firearm . . . in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm . . . with knowledge or intent that it would be used or

---

[1]See Plea Agreement, Docket Entry No. 25, pp. 8-11.

> possessed in connection with another offense, apply
> –
> (A)   § 2X1.1 (Attempt, Solicitation, or Conspiracy)
>       in respect to that other offense, if the
>       resulting offense level is greater than that
>       determined above.

U.S.S.G. § 2X1.1(a) provides that the base offense level is "[t]he

base offense level from the guideline for the substantive offense,

plus any adjustments from such guideline for any intended offense

conduct that can be established with reasonable certainty."

The probation officer explained his calculation of Cain's base

offense level as follows:

> This case involved the defendant's possession of a
> firearm or firearms in connection with the commission of:
> (1) a home invasion robbery (and related aggravated
> robbery), a violation of 18 U.S.C. § 1951 and/or Florida
> state law under Sections 812.1351(1) and
> 784.045(1)(A)(1), Florida Statutes; (2) an attempted bank
> robbery, a violation of 18 U.S.C. § 2113; and (3) a bank
> robbery, a violation of 18 U.S.C. § 2113.  The offense of
> robbery is found at U.S.S.G. § 2B3.1.  As more than one
> robbery is involved, the robbery resulting in the
> greatest offense level is applied, pursuant to U.S.S.G.
> § 1B1.5, comment (n.3).   (Note:   U.S.S.G. § 2K2.1,
> comment (n.11) states that the underlying offense under
> U.S.S.G. § 2K2.1(c)(1) "may be a federal, state, or local
> offense.")
>
> . . .
>
>
> U.S.S.G. § 2K2.1 contains a cross reference at U.S.S.G.
> § 2K2.1(c)(1) which directs application of U.S.S.G.
> § 2X1.1.  U.S.S.G. § 2X1.1(a) instructs that the base
> offense level is to be determined by the base offense
> level from the guideline for the substantive offense,
> plus any adjustments from that guideline for any intended
> offense conduct that can be established with reasonable
> certainty.  The offense of robbery is found at U.S.S.G.
> § 2B3.1.  The home invasion robbery (February 7, 2003) is

the most serious robbery offense.  U.S.S.G. § 1B1.5, comment (n.3).  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 1951 is found in U.S.S.G. § 2B3.1(a) and calls for a base offense level of 20.  Since a firearm was "otherwise used," to wit:  to strike and beat the homeowner-victim, a 6 level increase is applied pursuant to U.S.S.G. § 2B3.1(b)(2)(B). Because the victim of the home invasion robbery was severely beaten about the head with firearms and suffered a serious laceration of the thumb inflicted with pliers, injuries likely to involve extreme physical pain, all of which required medical intervention and hospital treatment, a 4-level increase is applied for "serious bodily injury," pursuant to U.S.S.G. § 2B3.1(b)(3)(B). As the homeowner-victim was physically restrained, i.e., tied/bound, to facilitate commission of the home invasion robbery or to facilitate escape, a 2-level increase is applied, pursuant to U.S.S.G. § 2B3.1(b)(4)(B).  Since a firearm (in this case 6 firearms) was (were) taken, a 1-level increase is applied, pursuant to U.S.S.G. § 2B3.1(b)(6).  Because the robbery yielded fruits in excess of $100,000 (firearms and collector's coins), a 2-level increase is applied pursuant to U.S.S.G. § 2B3.1(b)(7).  Therefore, the base offense level established pursuant to U.S.S.G. § 2X1.1(a), is 35 and is greater than that established under U.S.S.G. § 2K2.1; therefore, it becomes the base offense level and adjusted offense level in this case.  (PSR ¶¶ 65 and 67)

This explanation reflects that the defendant received a six-point increase under U.S.S.G. § 2B3.1(b)(2)(B) "[s]ince a firearm was 'otherwise used,' to wit:  to strike and beat the homeowner-victim," and that he received a one-point increase under U.S.S.G. § 2B3.1(b)(6) "[s]ince a firearm (in this case 6 firearms) was (were) taken."  (PSR ¶ 67)

**A.    Does the Home Invasion Qualify as "Another Offense"?**

-4-

In <u>United States v. Gonzales</u>, 996 F.2d 88, 91-92 (5th Cir. 1993), the court reasoned that

> [t]he language of § 2K2.1(c)(1) in no way suggests that it is limited to the offenses that the defendant intended to commit upon receipt or possession of the particular weapon in the charged offense.  Rather, the broad language of section 2K2.1(c)(1), particularly its unlimited references to "another offense," indicates that it is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by defendant concerning a firearm involved in the charged offense.

<u>Id</u>.  Consequently, the court concludes that the home invasion qualifies as another offense under § 2K2.1(c).

**B.  Did Cain Possess <u>a Firearm</u> "In Connection with the Commission" of the Home Invasion?**

Since the victim of the home invasion was beaten with a firearm before the perpetrators gained access to the Uzi and the other firearms that they stole from him, it is undisputed that <u>a firearm</u> was both used and possessed "in connection with the commission" of that offense, but that the firearm used to beat the victim was not the Uzi.

In <u>United States v. Mitchell</u>, 166 F.3d 748 (5th Cir. 1999), the court stated that to subject a defendant to § 2K2.1(c)

> the court had to find by a preponderance of the evidence that the . . . [the firearm specified in the charged offense, i.e., the Uzi firearm] was possessed by [the defendant, i.e., Cain] . . . in connection with the commission or attempted commission of another offense . . .

-5-

Id. at 753.   Although the Fifth Circuit has noted that § 2K2.1(c)(1) "literally includes not only offenses in which the firearm[] specified in the charged offense [was] used or possessed, but 'any' weapons used or possessed in the other offense[]," the Fifth Circuit has declined to read the word "any" literally. Gonzales, 996 F.2d at 92 & n.6.

> If the word 'any' were read literally, section 2K2.1(c)(1) would apply even though the weapon involved in the other offense had absolutely no relation to that specified in the charged offense.  Such a reading would have section 2K2.1(c)(1) apply, for example, to a weapon used by the defendant in a robbery committed months before he ever acquired the weapon specified in the offense of conviction.  The overall context of section 2K2.1, however, militates against such an expansive reading of "any firearm."  Thus, section 2K2.1(b)(4), which provides for a two level increase if "any firearm was stolen," obviously is not intended to apply to firearms wholly unrelated to the charged offense.  We do not suggest that the "firearm" referenced in section 2K2.1(c)(1) would not include a firearm which though not specified in the count of conviction was nevertheless part of its relevant conduct.

Id.  In Gonzales the court applied § 2K2.1(c) because the defendant possessed the firearm named in the charged offense during the commission of another offense.  Id.  Here, the court must decide if Cain possessed the Uzi firearm "in connection with the commission of" the home invasion.

**C.   Did Cain Possess the Uzi Firearm "In Connection with the Commission" of the Home Invasion?**

The Sentencing Commission used the phrase "in connection with" in both § 2K2.1(b)(5) and § 2K2.1(c).  Nevertheless, "in connection with another felony offense" used in § 2K2.1(b)(5) differs in meaning from "in connection with the commission . . . of another offense" used in § 2K2.1(c)(1).  See Mitchell, 166 F.3d at 755-756 (citing United States v. Condren, 18 F.3d 1190 (5th Cir.), cert. denied, 115 S.Ct. 161 (1994)).  In Mitchell the Fifth Circuit explained that

> [u]nlike the Guideline provision applied in Condren
> [§ 2K2.1(b)(5)], the "connection" required for
> applicability of Guideline § 2K2.1(c)(1) is with the
> *commission* of another offense.  We agree with the dicta
> in the Condren opinion -- and adopt it by reference as
> part of our holding today -- that § 2K2.1(c)'s
> requirement that the firearm be possessed in connection
> with the commission of another offense "*mandate[s] a
> closer relationship between the firearm and the other
> offense than that required for § 2K2.1(b)(5) purposes*.
> This is what we refer to as the *functional* nexus required
> by § 2K2.1(c)."

Id. (emphasis in original) (citing United States v. Richardson, 87 F.3d 706, 709 (5th Cir. 1996) (noting in dicta that "[i]f the gun was present to facilitate . . . [another offense], that conduct could have been sanctioned by applying [either] § 2K2.1(b)(5) or § 2K2.1(c)").  See United States v. Myers, 112 F.3d 406, 410-411 (9th Cir. 1997) (stating that the commentary following Amendment 374 of the sentencing guidelines explains:

> The firearm statutes are often used as a device to enable
> the federal court to exercise jurisdiction over offenses

-7-

that otherwise could be prosecuted only under state law.
For example, a convicted felon may be prosecuted for
possessing a firearm if he used the firearm to rob a
gasoline station.   In pre-guidelines practice, such
prosecutions resulted in high sentences because of the
true nature of the underlying conduct.   The cross
reference [containing the "commission or attempted
commission" language] deals with such cases.

U.S.S.G. App. C., Commentary, Background to Amendment 374 (1995) at

254.).

The court concludes that § 2K2.1(c) cannot be applied because

although Cain acquired possession of the Uzi firearm during the

home invasion, he did not possess the Uzi firearm in connection

with the commission of the home invasion because his possession of

the Uzi firearm did not facilitate the home invasion.

### III.   What Advisory Guidelines Do Apply?

As explained in paragraph 65 of the Presentence Investigation

Report, Cain's base offense level calculated pursuant to U.S.S.G.

§ 2K2.1(a)&(b) is 24.   Reducing that by two levels for acceptance

of responsibility results in a total offense level of 22.   Cain's

criminal history category calculated under the Guidelines is III,

resulting in an advisory guideline range of 51 to 63 months.

### IV.   Is an Upward Departure Warranted?

-8-

For a number of reasons the court concludes that an upward departure under the Sentencing Guidelines is warranted.  U.S.S.G. § 4A1.3 authorizes an upward departure if the defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  Both of the criteria for an upward departure under § 4A1.3 are satisfied in this case.

First, criminal history category III substantially under-represents the seriousness of Cain's criminal history.  Because of

their age, three of Cain's prior convictions were not considered in calculating his criminal history category.  In 1977 Cain was convicted of armed robbery.  (PSR ¶ 78)  In 1984 Cain was convicted of two different charges of automobile theft.  (PSR ¶¶ 79 and 80)  Had these convictions been included in calculating Cain's criminal history he would fall in criminal history category VI.

The court also concludes that it is likely that Cain will continue to commit crimes in the future.  Cain has been engaged in substantial, and often violent, criminal activity since 1976.  Although he has been sentenced to periods of confinement and undergone supervision by United States probation officers, he has continued to engage in serious criminal conduct.  Based on Cain's repeated resort to violent criminal conduct, a criminal history

category of III substantially under-represents the likelihood that he will commit future crimes.

The court concludes that an appropriate sentence based upon an upward departure under § 4A1.3 is 120 months in prison.

An upward departure is also warranted under U.S.S.G. § 5K2.0 because the repeal of 18 U.S.C. § 921(a)(30) prevents the application of U.S.S.G. § 2K2.1(a)(4)(B) even though the Sentencing Commission clearly intended that defendants such as Cain who possess semiautomatic assault weapons like the Uzi, should receive a greater punishment because these weapons represent an increased level of danger and violence.  Since the Uzi firearm that Cain possessed is a semiautomatic assault weapon and since Cain was a "prohibited person" because of his prior felony convictions, he meets the criteria of § 2.K2.1(a)(4)(B).  Because this factor is not currently taken into consideration under the Guidelines due to the repeal of 18 U.S.C. § 921(a)(30), an upward departure on this basis is warranted by U.S.S.G. § 5K2.0(a)(1)(A).  Had § 2K2.1(a)(4)(B) applied Cain's base offense level would be 30, and his total offense level would be 28.  Even at criminal history category III this would result in an advisory guideline range of 97 to 121 months.

## V.  Conclusion

The court concludes that § 4A1.3 and § 5K2.0 each provide an independent basis for sentencing Cain to 120 months in prison under the advisory guidelines.

Applying both § 4A1.3 and § 5K2.0 as bases for an upward departure the court concludes that the appropriate total offense level is 28, and the appropriate criminal history category for Cain is VI, resulting in an advisory guideline range of 140 to 175 months.

Because the maximum sentence available for the statute of conviction is 120 months in prison, the court will sentence Cain to that term of imprisonment.

The court concludes that the advisory Sentencing Guidelines address all of the factors set forth in 18 U.S.C. § 3553(a).

**SIGNED** at Houston, Texas, on this 25th day of July, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE